UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL DONALD THOMPSON, | No.  2:20-CV-0003 KJN |
| Plaintiff, | ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 12, 24) |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1] In his summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred by failing to find the opinion of a physician persuasive, and by improperly rejecting plaintiff's subjective-symptom testimony. The Commissioner filed a cross-motion for summary judgment, contending the decision is supported by substantial evidence and free from legal error.

The court DENIES the Commissioner's cross-motion for summary judgment, GRANTS plaintiff's motion, and REMANDS for further consideration of the issues.

///

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 7, 8, 23.)

1

## I.    RELEVANT LAW

The Social Security Act provides benefits for qualifying individuals with disabilities. Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) (Title II); 1382c(a)(3) (Title XVI). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may only review the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

---

[2] The sequential evaluation is summarized as follows:
    **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
    **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

## II.     BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

On July 14, 2017, plaintiff applied for Disability Insurance Benefits, alleging an onset date of October 2, 2016. (Administrative Transcript ("AT") 175, electronically filed at ECF No. 11.) Plaintiff alleged disability due to his diabetes, back pain/damaged discs, high blood pressure, high cholesterol, and a heart condition. (See AT 86.) Plaintiff's application was twice denied, and he sought review with an ALJ. (AT 98, 116, 128.) The ALJ held a hearing on October 10, 2018, at which plaintiff testified about his conditions, and a Vocational Expert ("VE") testified regarding available jobs for someone with plaintiff's limitations. (AT 31-84.)

On April 23, 2019, the ALJ issued a decision determining plaintiff was not disabled from his onset date forward. (AT 12-25.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 2, 2016. (Id.) At step two, the ALJ noted plaintiff had the following severe impairments: diabetes mellitus with neuropathy; degenerative disc disease and stenosis of the lumbar spine; and obesity status post bariatric surgery in August 2018. (AT 15.) At step three, the ALJ determined plaintiff was not disabled under the listings. (AT 18, citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> [He] is limited to occasional climbing of ramps and stairs; he cannot climb ropes, ladders, or scaffolds. He requires a cane for ambulation. [He] is limited to frequent balancing and to occasional stooping, kneeling, crouching, and crawling. He must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts. His field of vision is limited and has limited ability to do written work, which he cannot perform for more than 1/3 of the day.

(Id.) In fashioning this RFC, the ALJ stated she considered plaintiff's symptoms, the medical evidence, and professional medical opinions. (Id.) Relevant here, the ALJ found the opinion of neurosurgeon Dr. Senegor "not persuasive" because it was unsupported and inconsistent with the medical record. (AT 23.) The ALJ also rejected the more limiting aspects of plaintiff's subjective symptom testimony as unsupported by the medical evidence, inconsistent with his prior reports to various physicians, manageable with medication (when plaintiff complied with his treatment regimen), and not supported by the conservative treatment prescribed. (AT 20-23.)

Based on this RFC and the VE's testimony, the ALJ concluded plaintiff was capable of performing past relevant "light" work as either an administrative clerk or management trainee, as generally performed in the national economy. (AT 24.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (AT 25.)

Plaintiff appealed and was appointed counsel; thereafter the Appeals Council affirmed the ALJ's decision. (AT 168, 1-7.) Plaintiff filed this action requesting review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 12, 24, 25.)

### III. <u>DISCUSSION</u>

Plaintiff requests remand for additional proceedings, arguing the ALJ failed to (A) properly consider the medical opinion of Dr. Senegor in light of the medical evidence; and (B) acknowledge plaintiff's strong work history when considering his symptom testimony.

The Commissioner requests affirmance, arguing the ALJ (A) properly weighed the medical evidence and opinions under new regulations; and (B) need not have considered plaintiff's work history when resolving his symptom testimony.

**A. The ALJ failed to complete her analysis of the medical and opinion evidence.**
  <u>Legal Standard</u>

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations regarding the evaluation of medical evidence. See 82 Fed. Reg. 5844. For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) [i.e., the state-agency medical consultants], including those from your medical sources." See 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ is to evaluate medical opinions and prior administrative medical findings by considering their "persuasiveness." §§ 404.1520c(a); 416.920c(a). In determining how "persuasive" a medical source's opinions and findings are, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." §§ 404.1520c(b), (c)(1)-(5); 416.920c(b), (c)(1)-(5). Despite a requirement to "consider" all factors, the ALJ's duty to

4

articulate a rationale for each factor varies.  §§ 404.1520c(a)-(b); 416.920c(a)-(b).

In all cases, the ALJ must at least "explain how [she] considered" the supportability and consistency factors, as they are "the most important factors." §§ 404.1520c(b)(2); 416.920c(b)(2). For supportability, the regulations state:  "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." §§ 404.1520c(c)(1); 416.920c(c)(1).  For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be." §§ 404.1520c(c)(2); 416.920c(c)(2).  The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and "other") only where "two or more medical opinions or prior administrative medical findings about the same issue" are dissimilar, and both are "equally well-supported [and] consistent with the record."  §§ 404.1520c(b)(2)&(3); 416.920c(b)(2)&(3).  An ALJ may address multiple opinions from a single medical source in one analysis.[3]  §§ 416.920c(b)(1); 416.920c(b)(1) ("source-level articulation").

---

[3] For applications filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff . . . ." Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008).  This "treating physician rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." Id.  However, this hierarchy is no longer applicable under the new regulations. See 82 Fed. Reg. 5844. Beyond abrogating the treating physician rule, it is not yet clear how much the new regulations affect other Ninth Circuit principles governing Social Security review, as appeals of decisions governed by the new regulations are only just beginning to reach the district courts.  In the absence of binding interpretation by the Ninth Circuit, the court joins other district courts in concluding that longstanding general principles of judicial review—especially those rooted in the text of the Social Security Act—still apply to cases filed on or after March 27, 2017.  Cf, e.g., Jones v. Saul, 2021 WL 620475, *10 (E.D. Cal. Feb. 17, 2021) (finding the ALJ accurately noted the inconsistency between a physician's opinion and the treatment notes, and legitimately found this opinion unpersuasive, relying in part on Valentine v. Comm'r, 574 F.3d 685 (9th Cir. 2009) (holding that a contradiction between an opinion and treatment notes constitutes a "specific and legitimate" reason for rejecting the physician's opinion)); with Mark M. M. v. Saul, 2020 WL 2079288, (D. Mont. Apr. 29, 2020) (finding the ALJ failed to "link purportedly inconsistent evidence with the discounted medical opinion," relying on Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989) (requiring the ALJ to provide a detailed and thorough summary of conflicting

**Analysis**

Plaintiff primarily alleges error in the ALJ's analysis of neurosurgeon Dr. Senegor's opinion, arguing the ALJ selectively cited to the record and ignored corroborating medical evidence. The court, despite substantial agreement with the Commissioner on numerous individual issues (discussed below), concurs with plaintiff, and finds the ALJ impermissibly cherry-picked the record when analyzing the consistency and supportability of Dr. Senegor's opinion.

To review, the ALJ found the prior administrative medical findings of Drs. Hyunh and Douglas "persuasive" as to plaintiff's physical limitations, adopting them into the RFC almost verbatim. (AT 23; see also AT 18 (RFC allowing for light-work and noting plaintiff's ability to lift and carry 20 lbs. occasionally/10 lbs. frequently; sitting, standing, and walking for 6 hours; frequently balancing; and occasionally postulating).) The ALJ supported her analysis by citing to certain medical records existing across the longitudinal record concerning plaintiff's strength, sensation in his lower extremities, lumbar and hip range of motion, gait, and levels of pain. (See AT 20-21, 23.) Thus, the opinions of Drs. Hyunh and Douglas appear supported and consistent with the record. 20 C.F.R. § 404.1520c(b)-(c).

Conversely, in October 2018, Dr. Senegor assessed plaintiff's work-related limitations of "[n]o lifting over 10 pounds, no excessive sitting or standing over 30 minutes at a time, [and] no excessive bending, stooping or twisting." (AT 1241; see also AT 692 (June 2017 entry from Dr. Senegor with similar findings).) Dr. Senegor believed these limitations necessary based on his knowledge of plaintiff's medical history, his year-and-a-half long treatment of plaintiff, and his opinion that plaintiff's "lumbar scoliosis and stenosis at the L3-4  L4-5 levels" would require lumbar fusion surgery sometime in early 2019 (around when the ALJ issued her decision). (AT 1241.) Dr. Senegor noted his belief that an April 2017 CT scan "showed a scoliotic orientation of the L3-4 disc space with a collapsed [sic] on the right side and traction spurs on the right," as well as "stenosis at L3-4 and L4-5." (Id., citing AT 300.) Dr. Senegor also opined that physical

---

evidence, and an interpretation and findings thereon)).

therapy had proven ineffective, and that epidural injections had not fully resolved plaintiff's lower back and right hip pain. (Id.) Dr. Senegor concluded by opining that plaintiff was "permanently disabled from engaging in gainful employment." (Id.)

The ALJ found Dr. Senegor's opinion "not persuasive," articulating as follows:

> The opinion of Dr. Senegor is not persuasive as it is inconsistent with the record as a discussed under the relevant factors of SSR 16-3p. For example, he mentioned that a CT scan from April 2017 allegedly showed L3-4 disc space with collapse on the right side, but the CT scan did not show the alleged condition. An MRI scan did not show it either. Moreover, notes from August 2018 report claimant's pain level is 3/10 with medications and 8/10 without. There were no side effects from medication and a medial branch block provided 3 weeks of relief. The claimant reported temporary decrease in overall symptoms with medications and was taking only about 3 tablets of Tramadol a day on average. In addition, the opinion is inconsistent with the state agency medical opinions. (Exs. 2F at 6, 5F at 13, 26F at 84, 3lF).
>
> His opinion is also inconsistent with the medical evidence of record as previously discussed, e.g., examination of the claimant in March 2017 noted his muscle strength in the upper lower extremities was 5/5. Muscle tone in the upper and lower extremities was normal. There was no cogwheel, spasticity, atrophy, abnormal movements, fasciculation, or dyskinesias. Cranial Nerves showed: fair visual acuity, visual fields were full to confrontation; pupils were equal reactive to light and accommodation, normal eye movement; normal facial sensation, corneal reflexes present; face symmetric; normal and symmetric strength hearing fair; tuning fork symmetric hearing; able to listen whispered voice and/or finger rob gag reflex and palate movements normal. Shoulders shrug strength was normal and symmetric. The tongue was central with normal protrusion. Deep tendon reflexes were 1 + in the upper and lower extremities. The coordination of the finger/nose and heel/knee/shin was normal. There was normal rapid alternating movements in the upper and lower extremities. The claimant was diagnosed with peripheral neuropathy and intermittent low back pain. (Ex. 3F at 309-310).

(AT 23-24.) Some of this rationale suffices, while other portions do not.[4]

---

[4] In the briefing, the Commissioner offers additional arguments as to why the ALJ did not err when resolving Dr. Senegor's opinion. However, the ALJ did not explicitly reference these additional reasons, and the court can only affirm on the reasons stated in the decision. Luther, 891 F.3d at 875 (stating that the court may only review the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely). However, since the court is remanding for further proceedings, and wishes to provide further guidance on its interpretation of the new regulations, these arguments are addressed in dicta as follows.

First, the Commissioner is correct that the ALJ was not required to give deference to Dr. Senegor under the "treating physician rule," as it has been replaced by a paradigm that places all

First, as to Dr. Senegor's diagnosis of collapsed disc space on the right side at L3-4, the ALJ stated that neither the CT scan the doctor cited nor the April 2017 MRI "show[ed] the alleged condition." (AT 23, citing AT 300 (CT) and 1159 (MRI).) Plaintiff contends the ALJ was impermissibly "playing doctor" when examining these records because she made independent findings about what the CT and MRI scans showed. See, e.g., Neydavoud v. Astrue, 830 F. Supp. 2d 907, 913 (C.D. Cal. 2011) (holding that an ALJ "is not allowed to use [her] own medical judgment in lieu of that of a medical expert"). However, it appears the ALJ was simply relying on the impressions made by the technician who completed those procedures. This reliance was not in error. See Morgan v. Comm'r, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports).

Second, as to the portion of Dr. Senegor's opinion that relied on records of pain, the ALJ accurately noted plaintiff's pain was abating in late 2018 due to the success of his medication regimen and a "medial branch block" treatment. (AT 23, citing AT 1179, 1243-50, Ex. 27F.) This finding, and reliance on the records cited, was not error. See, e.g., Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]").

Third, the ALJ accurately noted how Dr. Senegor's opinion was inconsistent with the

---

medical opinions "on equal footing." (ECF No. 24 at 21.) To his credit, plaintiff does not disagree, and notes in his reply that any references to Dr. Senegor being a "treating physician" is not meant to revive this old hierarchy. (ECF No. 25.) Instead, plaintiff argues Dr. Senegor's relationship is relevant under Section 404.1520c(c)(3), which would be discussed had the ALJ found Drs. Senegor, Hyunh, and Douglas "equally persuasive." (See below.)

Second, as to Dr. Senegor's statement that plaintiff is "permanently disabled" (AT 1241), the regulations make clear that conclusions regarding disability are explicitly "reserved to the Commissioner," and a physician's conclusion on this subject need not be considered. See 20 C.F.R. § 404.1520b(c)(3)(i) (finding "[s]tatements that you are or are not disabled" to be "[e]vidence that is inherently neither valuable nor persuasive").

Third, though the ALJ noted plaintiff's "primary care physician had released [plaintiff] to go back to work," (AT 23), the ALJ did not cite to this opinion when resolving Dr. Senegor's expressed limitations. (See AT 23-24.) This makes sense, because this "release" was included in a progress note from plaintiff's psychologist, and only concerned plaintiff's mental state. (See AT 321.) Thus, it appears inapposite to Dr. Senegor's opinions on plaintiff's physical limitations.

8

prior administrative findings of Drs. Hyunh and Douglas.  (AT 23-24.)  This is not only accurate, but self-evident from the text of the doctors' opinions.

If the record were as the ALJ described, her articulated rationale would support a finding that Dr. Senegor's opinion was unsupported and inconsistent with the medical evidence of record.  The ALJ's first paragraph accurately details unsupported portions of Dr. Senegor's opinion, and appropriately resolves the inconsistencies between the doctor's statements and the record and other opinions.  Further, the second paragraph notes mostly normal findings regarding plaintiff's physical conditions in the record, citing by way of example a March 2017 record demonstrated normal findings in strength, sensation in the extremities, range of motion in the ankles and feet, and gait.  (AT 24, citing AT 612-13.)  This statement in and of itself is not inaccurate, nor are the ALJ's prior synopses about certain medical records in plaintiff's case file.  (See AT 20-22.)  Simply, under this hypothetical record, the undersigned would have no issues affirming the ALJ's decision under the new regulations.  See, e.g., Jones v. Berryhill, 392 F. Supp. 3d 831, 339 (M.D. Tenn. 2019) (affirming ALJ's finding that physician's opinion was unpersuasive because it was "not supportable or consistent with the record," where there was no evidence in the entire case record supporting the physician's opinion).

However, the ALJ's second paragraph attempting to resolve Dr. Senegor's opinion is a classic case of cherry-picking.  As plaintiff notes, there is ample "objective medical evidence" (20 C.F.R. 404.1502(f)) in the record from multiple of plaintiff's "medical sources" (20 C.F.R. 404.1502(d)) that supports Dr. Senegor's more limiting opinion, conflicts with the state-agency findings, and stretches across a lengthy treatment period.  (See, e.g., AT 607, 734, 772, 1116, 1123-24, 1126, 1190, 1246 (notes in the record concerning "reduced strength" and "decreased or absent sensation" in plaintiff's lower extremities"); AT 310, 608-09, 772, 1190, 1246 (records concerning "reduced lumbar and hip range of motion"); AT 606, 612, 772, 1190, 1246 (records demonstrating "abnormal" gait); AT 309, 520, 608, 611, 728, 754, 771, 774, 1111-13, 1124, 1160, 1188, 1245, 1247, 1249 (records demonstrating complaints of severe pain); (AT 1241) (record demonstrating Dr. Senegor's intent to perform lumbar fusion surgery, despite the "temporary relief in plaintiff's pain level from medications and injections.").)  Critically, the

majority of the medical records cited by the ALJ were generated between September of 2016 and June of 2017—prior to Dr. Senegor's treatment of plaintiff.  (See AT 20-22, often citing to AT 304-657 (Ex. 3F); see also AT 1241 (noting Dr. Senegor's treatment began in June of 2017).)  However, a substantial portion of the medical evidence supporting Dr. Senegor's opinion of worsening conditions was generated in the year leading up to the ALJ's decision.  (See, e.g., AT 1191 (June 2018 record from plaintiff's P.A. noting plaintiff "has already been treated conservatively without lasting results").)  Further, the state-agency physicians who reviewed the record did not have the benefit of the latter evidence, as they conducted their reviews in 2017 and January 2018.  Thus, the record is not wholly as the ALJ describes in her second paragraph.

Taking this evidence into account, the question becomes: how do these new regulations square with prior precedent prohibiting cherry-picking?  See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding a lack of substantial evidence where the ALJ's decision did not account for record "as a whole," but rather relied on "cherry-picked" evidence).  Does the existence of this evidence indicate Dr. Senegor's opinion was "equally well-supported . . . and consistent with the record," so as to as to be "equally persuasive"?  If so, the ALJ would be required to expound on the remaining factors.  See 20 C.F.R. § 404.1520c(b)(3) (requiring articulation on the remaining factors of Section 404.1520c(c) where two or more medical opinions/findings are "both equally well-supported" and "consistent with the record").

The term "equally" is not defined in the regulations, but the terms "supportability" and "consistency" are defined—in relative terms.  See § 404.1520c(c)(1) ("Supportability.  The more relevant . . . ."); § 404.1520c(c)(2) ("Consistency.  The more consistent . . . .") (emphasis added).  Thankfully, though the courts do have a well-defined understanding of a similarly-relative term: "substantial evidence."  Ford, 950 F.3d at 1154 (defining substantial evidence as more than a scintilla but less than a preponderance, i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  Further, cases expressing a prohibition against cherry-picking not only have relied on this "substantial evidence" standard, but also have rooted the rationale in the Social Security Act's requirement that the agency consider  "all evidence available [in the] record."  See Ghanim, 763 F.3d at 1164 (citing to cases that ultimately rely on

10

42 U.S.C. Section 423(d)(5)(B) in reasoning that "cherry-picked" evidence is not substantial evidence). The undersigned finds this precept aligns well with the relative nature of these new regulations. Thus, where there is "more than a mere scintilla" of objective medical evidence to indicate a medical opinion is well-supported, and there is consistency between the medical opinion and this longitudinal evidence, the medical opinion should be deemed "equally persuasive" so as to trigger the ALJ's duty to expound on the remaining factors. Id.; 20 C.F.R. § 404.1520c(b)(3).

As of this order, no circuit court has weighed in on this issue. However, numerous district courts across the country similarly rejected the ALJ's decision where substantial evidence was ignored. The undersigned finds the reasoning therein highly persuasive. See, e.g., White v Comm'r, 2021 WL 858662, *20-21 (N.D. Ohio Mar. 8, 2021) (finding the ALJ failed to explain why a physician's limiting opinion was not persuasive in the face of evidence that supported and was consistent with the opinion; relying on prior circuit precedent that "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked"); Kaehr v. Saul, 2021 WL 321450, *2-4 (N.D. Ind. Feb. 1, 2021) (finding the ALJ "cherry-picked evidence, and thus didn't provide substantial evidence to support his conclusion," where the decision did not discuss the supportability of a physician's limiting opinion and did not consider the totality of the record in evaluating the opinion's consistency; citing prior circuit precedent applicable to the new regulations); Vellone v Saul, 2021 WL 319354, *9-10 (S.D.N.Y. Jan. 29, 2021) (finding the ALJ's RFC determination "not supported by substantial evidence" where the medical records at times indicated normal gait and spine, but other times indicated abnormal gait and worsening lower back pain, but where the ALJ "cherry-picked treatment notes that supported his RFC determination while ignoring equally, if not more significant evidence in those same records"; relying on cases prohibiting cherry-picking); Etherington v. Saul, 2021 WL 414556, *4-5 (N.D. Ind. Jan. 21, 2021) (finding "a good deal in the record that cuts against [the ALJ's supportability and consistency] determination," and noting "this evidence received no such attention"; relying on prior circuit precedent prohibiting cherry-picking); Audrey P. v. Saul, 2021 WL 76751, *9-10 (D.R.I. Jan. 8, 2021) (remanding for further consideration where "dramatic example[s]" of

cherry-picking led the ALJ to ignore a source's "overarching conclusion that Plaintiff suffered from significant and unresolved '[f]unctional difficulty includ[ing] standing, sitting, bending over and walking all 2/2 pain'"); Pearce v. Saul, 2020 WL 7585915, *4-6 (D.S.C. Dec. 22, 2020) (noting the plethora of medical records supporting and consistent with a physician's limiting opinion when determining the ALJ cherry-picked the evidence to discount this opinion, and holding that "[a]lthough the ALJ appears to have considered the appropriate factors, [she] has failed to explain how the evidence supports her conclusion and meaningful review is frustrated"; relying on recent circuit precedent under the old regulations stating that "specious inconsistencies cannot reasonably support a rejection of medical opinions or other evidence"). In comparison to these cases, other district courts have found it entirely appropriate for an ALJ to articulate a rationale only for the supportability and consistency factors where there is less than a scintilla in the record to support a medical opinion. See, e.g., Paula J.S., v. Comm'r, 2021 WL 1019939, at *4 (W.D. Wash. Mar. 17, 2021) ("Plaintiff claims the ALJ cherry-picked the record[, but] does not point the Court to any examples of alleged omissions."); Jones, 392 F. Supp. 3d at 339.

    Here, it is clear the ALJ found Dr. Senegor's opinion not equally as persuasive as the state-agency physicians' opinions, as the decision does not expound on the remaining (c)(3)-(5) factors. However, as indicated above, the ALJ erred in so finding without addressing the substantial evidence that supports and is consistent with Dr. Senegor's opinion (and detracts from the persuasiveness of the state-agency opinions). Because the ALJ cherry-picked facts here, she impermissibly avoided expounding on the remaining factors of Section 404.1520c(c). 42 U.S.C. § 423(d)(5)(B); Ghanim, 763 F.3d at 1164. The proper remedy for this error is remand, where the ALJ may either reaffirm her decision after a more thorough explanation or award benefits. Ford, 950 F.3d at 1154 (the ALJ is responsible for resolving conflicts and ambiguities in the record).

    Because there is currently a dearth of case law on this issue, the undersigned takes a moment to respond in detail to the Commissioner's argument regarding the interplay between the new regulations and existing Circuit precedent. The Commissioner contends that an ALJ is no longer required to explain any "rejection" of a medical opinion, as these standards have now been abrogated alongside the treating physician rule. See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675

(9th Cir. 2017) ("To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."). The Commissioner argues the new regulations now require an ALJ only to explain why a doctor's opinion was unsupported and inconsistent with the record. See § 404.1520c(b)-(c). The Commissioner argues the ALJ met her burden here by (i) identifying Dr. Senegor's opinion as "not persuasive" and citing to records supporting this conclusion, and (ii) relying on the prior administrative medical findings of Drs. Hyunh and Douglas, whose opinions formed the basis for the majority of the limitations expressed in the RFC. Thus, the Commissioner contends Dr. Senegor's opinion was not equally persuasive, so there was no need to expound on the remaining factors of Section 404.1520c(c).

As the court understands the Commissioner's argument, when an ALJ wishes to label a medical opinion unpersuasive, all she need do is cite to a few pieces of evidence that contradict the opinion in order to fulfill her duty under the new regulations—despite the fact that this "unpersuasive" opinion may be supported by other relevant medical evidence and consistent with the longitudinal record. The Commissioner's framework presents two obvious problems. First, it would allow ALJs to avoid ever having to address the remaining factors, as an ALJ could simply ignore substantial evidence in the record by picking around it. Though the regulations have changed, the governing statute still requires an ALJ to base the decision on "all the evidence available in the [record]." See 42 U.S.C. § 423(d)(5)(B); Ghanim, 763 F.3d at 1164. Second, if an ALJ were allowed to cherry-pick the record for facts that align with an "unpersuasive" finding and ignore facts that might otherwise call that finding into question, a reviewing court would be required to ignore large portions of the record simply because the ALJ decided to avoid discussing evidence favorable to a claimant. However, the Ninth Circuit has long held that a court may not affirm by isolating a "specific quantum of supporting evidence." Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). As a court in this district recently noted, the ALJ is still required to fully articulate the rationale relied upon. See Jones v. Saul, 2021 WL 620475 *8 (the ALJ cannot "forego articulation of their reason or reasons altogether"); see also Lambert, 980 F.3d at 1277 ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")

The undersigned is aware of the considerable deference courts are to afford an ALJ concerning the evaluation of medical evidence. See Ford, 950 F.3d at 1154; Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002) (it is "solely the province of the ALJ to resolve" conflicts in medical opinion evidence). The court is also aware of the agency's expectation of deference to the regulations. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, *5860 (January 18, 2017) (available at 2017 WL 168819) ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the agency appears to be aware that the new regulations do not "set out a detailed rule" for when medical opinions are both equally well-supported and consistent with the record, as "the content of evidence . . . varies with each unique claim." Id. at *5858. Thus, in lieu of a detailed rule, the agency relied on the fact that subsection 404.1520c(b) sets a "minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court," and that "[i]n light of the level of articulation we expect from our adjudicators, we do not believe that these final rules will result in an increase in appeals or remands from the courts." The court concurs, so long as the substantial evidence standard is met.[5]

---

[5] In the Commissioner's ten-page summary of the medical evidence, there are multiple descriptions of portions of the record that the ALJ did not discuss. (See ECF No. 24 at 2-11.) The overall character of these citations concern various facts that an ALJ might consider when entering a finding of malingering. (See, e.g., id. at 2 ("Plaintiff said he had been taking his mother's Norco (an opioid medication) for pain (AR 520)."); id. at 3 ("adding that he had been eating more brownies with THC, purportedly to help his mood (AR 361)."); id. at 4 ("Between April 28 and June 12, 2017, Plaintiff approached at least five different clinicians requesting assistance with his efforts to obtain disability benefits, offering varied explanations for why he should be found disabled. All declined."); id. at 5 ("The clinician noted Plaintiff's frustration over her refusal to complete the disability forms (AR 328)."); id. ("[O]n May 17, 2017, Plaintiff expressed similar frustrations to Ms. Coble, stating that he was stressed by his lack of income and frustrated because his primary care practitioner released him to return to work, contrary to his wishes (AR 321)."); id. at 6 ("On June 14, 2017, just two days after Dr. Wang refused to complete disability paperwork, Plaintiff met with a primary care physician . . . at Lodi Health, . . . expressing dissatisfaction with his prior physician, purportedly because she accused him of drug-seeking behavior and did not help him (AR 754)."); id. at 9 ("Rather than return to Dr. Aquino [after she recommended conservative treatment], Plaintiff opted to find a new provider.").) However, as the ALJ made no finding of malingering, the undersigned can only conclude the Commissioner referred to these portions of the record in order to call into question plaintiff's character. In the absence of a malingering finding for this court to review, these background

**B. The ALJ's analysis of plaintiff's subjective-symptom testimony appears sufficient.**

Because further proceedings are required, the court does not explicitly rule on plaintiff's other contention (regarding the ALJ's treatment of plaintiff's subjective-symptom testimony). However, the court would be remiss if it failed to mention that the ALJ's analysis appears well-reasoned.  See, e.g., Smith v. Colvin, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (rejecting claimant's argument that ALJ was required to consider good work history and noting lack of authority "suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history").  On remand, it is (of course) within the ALJ discretion as to how much additional analysis should be performed on this issue.

## IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 24) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;
3. The final decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings; and
4. The Clerk of Court shall issue judgment in plaintiff's favor and CLOSE this case.

Dated: March 24, 2021

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

thom.3

---

events are quite irrelevant.  The court finds the Commissioner's extreme emphasis on these details an inappropriate and unhelpful distraction from the court's ultimate duty simply to review the findings stated by the ALJ for legal error and substantial evidence.