1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARL DONALD THOMPSON,                    No.  2:20-cv-3-KJN

12                   Plaintiff,                 ORDER ON PARTIES' CROSS-MOTIONS
                                                FOR SUMMARY JUDGMENT
13          v.
                                                (ECF Nos. 12, 24)
14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                   Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18    denying his application for Disability Insurance Benefits under Title II of the Social Security

19    Act.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ")

20    erred by failing to find the opinion of a physician persuasive and by improperly rejecting

21    plaintiff's subjective-symptom testimony.  The Commissioner filed a cross-motion for summary

22    judgment, contending the ALJ's decision is supported by substantial evidence and free from legal

23    error.

24          For the reasons set forth below, the court DENIES the Commissioner's cross-motion for

25    summary judgment, GRANTS plaintiff's motion, and REMANDS for further consideration of the

26

27    _____
      [1]       This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule
28    302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the
      case was reassigned to the undersigned for all purposes.  (ECF Nos. 7, 8, 23.)

                                                    1

1    issues.

2    I.    **RELEVANT LAW**

3         The Social Security Act provides benefits for qualifying individuals with disabilities.

4    Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to

5    "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) (Title II);

6    1382c(a)(3) (Title XVI).  An ALJ is to follow a five-step sequence when evaluating an

7    applicant's eligibility for benefits.[2]  20 C.F.R. § 404.1520(a)(4).

8         A district court may reverse the agency's decision only if the ALJ's decision "contains

9    legal error or is not supported by substantial evidence."  Ford v. Saul, 950 F.3d 1141, 1154 (9th

10   Cir. 2020).  Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e.,

11   "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12   Id.  The court reviews the record as a whole, including evidence that both supports and detracts

13   from the ALJ's conclusion.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the

14   court may review only the reasons provided by the ALJ in the decision, and may not affirm on a

15   ground upon which the ALJ did not rely.  Id.  "[T]he ALJ must provide sufficient reasoning that

16   allows [the court] to perform [a] review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

17        The ALJ "is responsible for determining credibility, resolving conflicts in medical

18   testimony, and resolving ambiguities."  Ford, 950 F.3d at 1154.  Where evidence is susceptible to

19

20   [2]    The sequential evaluation is summarized as follows:
21         **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
           claimant is found not disabled.  If not, proceed to step two.
22         **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
           three.  If not, then a finding of not disabled is appropriate.
23         **Step three**: Does the claimant's impairment or combination of impairments meet
           or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
24         claimant is automatically determined disabled.  If not, proceed to step four.
           **Step four**: Is the claimant capable of performing past relevant work?  If so, the
25         claimant is not disabled.  If not, proceed to step five.
           **Step five**: Does the claimant have the residual functional capacity to perform any
26         other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
27
     Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The burden of proof rests with the
28   claimant through step four, and with the Commissioner at step five.  Ford, 950 F.3d at 1148.

2

1  more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the

2  court may not reverse the ALJ's decision on account of harmless error. Id.

3  **II.    BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

4       On July 14, 2017, plaintiff applied for Disability Insurance Benefits, alleging an onset

5  date of October 2, 2016. (Administrative Transcript ("AT") 175, electronically filed at ECF

6  No. 11.) Plaintiff alleged disability due to his diabetes, back pain/damaged discs, high blood

7  pressure, high cholesterol, and a heart condition. (See AT 86.) Plaintiff's application was twice

8  denied, and he sought review with an ALJ. (AT 98, 116, 128.) The ALJ held a hearing on

9  October 10, 2018, where plaintiff testified about his conditions, and a Vocational Expert ("VE")

10  testified regarding available jobs for someone with plaintiff's limitations. (AT 31-84.)

11       On April 23, 2019, the ALJ issued a decision determining that plaintiff was not disabled

12  from his onset date forward. (AT 12-25.) At step one, the ALJ found plaintiff had not engaged in

13  substantial gainful activity since his alleged onset date of October 2, 2016. (Id.) At step two, the

14  ALJ noted plaintiff had the following severe impairments: diabetes mellitus with neuropathy;

15  degenerative disc disease and stenosis of the lumbar spine; and obesity status post bariatric

16  surgery in August 2018. (AT 15.) At step three, the ALJ determined plaintiff was not disabled

17  under the listings. (AT 18, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.)

18       The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to

19  perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

20            [He] is limited to occasional climbing of ramps and stairs; he cannot
              climb ropes, ladders, or scaffolds. He requires a cane for ambulation.
21            [He] is limited to frequent balancing and to occasional stooping,
              kneeling, crouching, and crawling. He must be protected from
22            workplace hazards, such as unprotected heights and dangerous moving
              mechanical parts. His field of vision is limited and has limited ability to
23            do written work, which he cannot perform for more than 1/3 of the day.

24  (Id.) In fashioning this RFC, the ALJ stated she considered plaintiff's symptoms, the medical

25  evidence, and professional medical opinions. (Id.) Relevant here, the ALJ found the opinion of

26  neurosurgeon Dr. Senegor "not persuasive" because it was inconsistent with the medical record.

27  (AT 23.) The ALJ also rejected the more limiting aspects of plaintiff's subjective-symptom

28  testimony as unsupported by the medical evidence, inconsistent with his prior reports to various

3

physicians, manageable with medication (when plaintiff complied with his treatment regimen), and not supported by the conservative treatment prescribed. (AT 20-23.) Based on this RFC and the VE's testimony, the ALJ concluded plaintiff was capable of performing past relevant "light" work as either an administrative clerk or management trainee, as generally performed in the national economy. (AT 24.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (AT 25.)

Plaintiff appealed and was appointed counsel. Thereafter, the Appeals Council affirmed the ALJ's decision. (AT 168, 1-7.) Plaintiff filed this action requesting review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 12, 24, 25.)

## III.    DISCUSSION

Plaintiff requests remand for additional proceedings, arguing the ALJ failed to: (A) properly consider the medical opinion of Dr. Senegor in light of the medical evidence; and (B) acknowledge plaintiff's strong work history when considering his symptom testimony.

The Commissioner requests affirmance, arguing the ALJ: (A) properly weighed the medical evidence and opinions under the new regulations; and (B) need not have considered plaintiff's work history when resolving his symptom testimony.

### A.    The ALJ failed to complete her analysis of the medical and opinion evidence.

### Legal Standard

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations regarding the evaluation of medical evidence. See 82 Fed. Reg. 5844. For applications filed on or after March 27, 2017,[3] an ALJ need "not defer or give any specific

---

[3]    For applications filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff . . . ." Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). This "treating physician rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. However, this hierarchy is no longer applicable under the new regulations. See 82 Fed. Reg. 5844. Beyond abrogating the treating physician rule, it is not yet clear how much the new regulations affect other Ninth Circuit principles governing Social Security review, as appeals of decisions

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including

those from [a claimant's] medical sources."  See 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to

evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a).  In

determining how "persuasive" are the opinions of a medical source or PAMF, an ALJ must

consider the following factors:  supportability, consistency, treatment relationship, specialization,

and "other factors." § 404.1520c(b), (c)(1)-(5).

Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for

each factor varies. § 404.1520c(a)-(b).  In all cases, the ALJ must at least "explain how [she]

considered" the supportability and consistency factors, as they are "the most important factors."

§ 404.1520c(b)(2).  For supportability, the regulations state:  "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the

opinion or PAMF] will be." § 404.1520c(c)(1).  For consistency, the regulations state: "[t]he

more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive

[the opinion or PAMF] will be." § 404.1520c(c)(2).  The ALJ is required to articulate findings on

the remaining factors (relationship with claimant, specialization, and "other") only where "two or

more medical opinions or prior administrative medical findings about the same issue" are "not

exactly the same," and both are "equally well-supported [and] consistent with the record."

governed by the new regulations are only just beginning to reach the district courts.  In the
absence of binding interpretation by the Ninth Circuit, the court joins other district courts in
concluding that longstanding general principles of judicial review—especially those rooted in the
text of the Social Security Act—still apply to cases filed on or after March 27, 2017.  Cf, e.g.,
Jones v. Saul, 2021 WL 620475, *10 (E.D. Cal. Feb. 17, 2021) (finding the ALJ legitimately
found a physician's opinion unpersuasive by accurately noting the inconsistency between the
opinion and the treatment notes, relying in part on Valentine v. Comm'r, 574 F.3d 685 (9th Cir.
2009) (holding that a contradiction between an opinion and treatment notes constitutes a "specific
and legitimate" reason for rejecting the physician's opinion)); with Mark M. M. v. Saul, 2020 WL
2079288, (D. Mont. Apr. 29, 2020) (finding the ALJ failed to "link purportedly inconsistent
evidence with the discounted medical opinion," relying on Magallanes v. Bowen, 881 F.2d 747
(9th Cir. 1989) (requiring the ALJ to provide a detailed and thorough summary of conflicting
evidence, and an interpretation and findings thereon)).

§ 404.1520c(b)(2)&(3). An ALJ may address multiple opinions from a single medical source in one analysis. § 416.920c(b)(1) ("source-level articulation").

**<u>Analysis</u>**

Plaintiff primarily alleges error in the ALJ's analysis of neurosurgeon Dr. Senegor's opinion, arguing the ALJ selectively cited to the record and ignored corroborating medical evidence. The court concurs with plaintiff (despite substantial agreement with the Commissioner on numerous individual issues, discussed below), and finds the ALJ impermissibly cherry-picked the record when analyzing the consistency of Dr. Senegor's opinion.

To review, the ALJ found the prior administrative medical findings of Drs. Hyunh and Douglas "persuasive" as to plaintiff's physical limitations, adopting them into the RFC almost verbatim. (AT 23; <u>see also</u> AT 18 (RFC allowing for light-work and noting plaintiff's ability to lift and carry 20 lbs. occasionally/10 lbs. frequently; sit, stand, and walk for 6 hours; frequently balance; and occasionally perform other physical acts).) The ALJ supported her analysis by citing to certain medical records existing across the longitudinal record concerning plaintiff's strength, sensation in his lower extremities, lumbar and hip range of motion, gait, and levels of pain. (<u>See</u> AT 20-21, 23.) Thus, the prior administrative medical findings of Drs. Hyunh and Douglas appear supported and consistent with the record. 20 C.F.R. § 404.1520c(b)-(c).

Conversely, in October 2018, Dr. Senegor assessed work-related limitations of "[n]o lifting over 10 pounds, no excessive sitting or standing over 30 minutes at a time, [and] no excessive bending, stooping or twisting." (AT 1241; <u>see also</u> AT 692 (June 2017 entry from Dr. Senegor with similar findings).) Dr. Senegor believed these limitations were necessary based on his knowledge of plaintiff's medical history, his year-and-a-half-long treatment of plaintiff, and his opinion that plaintiff's "lumbar scoliosis and stenosis at the L3-4 L4-5 levels" would require lumbar fusion surgery sometime in early 2019 (around when the ALJ issued her decision). (AT 1241.) Dr. Senegor noted his belief that an April 2017 CT scan "showed a scoliotic orientation of the L3-4 disc space with a collapsed [sic] on the right side and traction spurs on the right," as well as "stenosis at L3-4 and L4-5." (<u>Id.</u>, citing AT 300.) Dr. Senegor also opined that physical therapy had proven ineffective, and that epidural injections had not fully resolved plaintiff's

lower back and right hip pain.  (Id.)  Dr. Senegor concluded by opining that plaintiff was "permanently disabled from engaging in gainful employment."  (Id.)

The ALJ found Dr. Senegor's opinion "not persuasive," explaining:

> The opinion of Dr. Senegor is not persuasive as it is inconsistent with the record as a discussed under the relevant factors of SSR 16-3p.  For example, he mentioned that a CT scan from April 2017 allegedly showed L3-4 disc space with collapse on the right side, but the CT scan did not show the alleged condition.  An MRI scan did not show it either. Moreover, notes from August 2018 report claimant's pain level is 3/10 with medications and 8/10 without. There were no side effects from medication and a medial branch block provided 3 weeks of relief. The claimant reported temporary decrease in overall symptoms with medications and was taking only about 3 tablets of Tramadol a day on average. In addition, the opinion is inconsistent with the [prior administrative medical findings]. (Exs. 2F at 6, 5F at 13, 26F at 84, 3lF).

> His opinion is also inconsistent with the medical evidence of record as previously discussed, e.g., examination of the claimant in March 2017 noted his muscle strength in the upper lower extremities was 5/5. Muscle tone in the upper and lower extremities was normal. There was no cogwheel, spasticity, atrophy, abnormal movements, fasciculation, or dyskinesias. Cranial Nerves showed: fair visual acuity, visual fields were full to confrontation; pupils were equal reactive to light and accommodation, normal eye movement; normal facial sensation, corneal reflexes present; face symmetric; normal and symmetric strength hearing fair; tuning fork symmetric hearing; able to listen whispered voice and/or finger rob gag reflex and palate movements normal. Shoulders shrug strength was normal and symmetric. The tongue was central with normal protrusion. Deep tendon reflexes were 1 + in the upper and lower extremities. The coordination of the finger/nose and heel/knee/shin was normal. There was normal rapid alternating movements in the upper and lower extremities. The claimant was diagnosed with peripheral neuropathy and intermittent low back pain.  (Ex. 3F at 309-310).

(AT 23-24.)  Some of this rationale suffices under Ninth Circuit precedent.

First, as to Dr. Senegor's diagnosis of collapsed disc space on the right side at L3-4, the ALJ stated that neither the CT scan the doctor cited nor the April 2017 MRI "show[ed] the alleged condition."  (AT 23, citing AT 300 (CT) and 1159 (MRI).)  Plaintiff contends the ALJ was impermissibly "playing doctor" when examining these records because she made independent findings about what the CT and MRI scans showed.  See, e.g., Neydavoud v. Astrue, 830 F. Supp. 2d 907, 913 (C.D. Cal. 2011) (holding that an ALJ "is not allowed to use [her] own medical judgment in lieu of that of a medical expert").  However, it appears the ALJ was simply

relying on the impressions made by the technician who completed those procedures. This reliance was not in error. See Morgan v. Comm'r, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports).

Second, as to the portion of Dr. Senegor's opinion that relied on records of pain, the ALJ accurately noted plaintiff's pain was abating in late 2018 due to the success of his medication regimen and a "medial branch block" treatment. (AT 23, citing AT 1179, 1243-50, Ex. 27F.) This finding, and reliance on the records cited, was not error. See, e.g., Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]").

Third, the ALJ accurately noted how Dr. Senegor's opinion was inconsistent with the prior administrative medical findings of Drs. Hyunh and Douglas. (AT 23-24.) This is not only accurate, but self-evident from the text of the doctor's opinions and administrative findings. [4]

---

[4] In the briefing, the Commissioner offers additional arguments as to why the ALJ did not err when resolving Dr. Senegor's opinion. However, the ALJ did not explicitly reference these additional reasons, and the court can only affirm on the reasons stated in the decision. Luther, 891 F.3d at 875 (stating that the court may only review the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely). However, since the court is remanding for further proceedings, and wishes to provide further guidance on its interpretation of the new regulations, these arguments are addressed as follows.

First, it appears the Commissioner is correct that the ALJ was not required to give deference to Dr. Senegor under the "treating physician rule," as this rule was replaced by a paradigm that places all medical opinions "on equal footing." (ECF No. 24 at 21.) Plaintiff does not disagree, and notes in his reply that any references to Dr. Senegor being a "treating physician" is not meant to revive this old hierarchy. (ECF No. 25.) Instead, plaintiff argues Dr. Senegor's relationship is relevant under Section 404.1520c(c)(3)—an issue the ALJ would have discussed had she found Drs. Senegor, Hyunh, and Douglas "equally persuasive" on some issue. The undersigned previously provided an analysis of the "equally persuasive" issue, but this order was vacated. The issue is explicitly left for another case.

Second, as to Dr. Senegor's statement that plaintiff is "permanently disabled" (AT 1241), the regulations make clear that conclusions regarding disability are explicitly "reserved to the Commissioner," and a physician's conclusion on this subject need not be considered. See 20 C.F.R. § 404.1520b(c)(3)(i) (finding "[s]tatements that you are or are not disabled" to be "[e]vidence that is inherently neither valuable nor persuasive").

Third, though the ALJ noted plaintiff's "primary care physician had released [plaintiff] to go back to work," (AT 23), the ALJ did not cite to this opinion when resolving Dr. Senegor's expressed limitations. (See AT 23-24.) This makes sense, because this "release" was included in a progress note from plaintiff's psychologist, and only concerned plaintiff's mental state. (See

If the record was limited to the evidence as the ALJ described, her articulated rationale would support a finding that Dr. Senegor's opinion was inconsistent with the medical evidence from other medical and nonmedical sources.  However, the ALJ's attempt to resolve Dr. Senegor's opinion is a classic case of cherry-picking.  As plaintiff notes, there is ample "objective medical evidence" (20 C.F.R. § 404.1502(f)) in the record from multiple of plaintiff's other "medical sources" (20 C.F.R. § 404.1502(d)) that supports Dr. Senegor's opinions, conflicts with the prior administrative medical findings, and stretches across a lengthy treatment period.  (See, e.g., AT 607, 734, 772, 1116, 1123-24, 1126, 1190, 1246 (notes in the record concerning "reduced strength" and "decreased or absent sensation" in plaintiff's lower extremities"); AT 310, 608-09, 772, 1190, 1246 (records concerning "reduced lumbar and hip range of motion"); AT 606, 612, 772, 1190, 1246 (records demonstrating "abnormal" gait); AT 309, 520, 608, 611, 728, 754, 771, 774, 1111-13, 1124, 1160, 1188, 1245, 1247, 1249 (records demonstrating complaints of severe pain).)  Critically, the majority of the medical records cited by the ALJ were generated between September of 2016 and June of 2017—prior to Dr. Senegor's treatment of plaintiff.  (See AT 20-22, often citing to AT 304-657 (Ex. 3F); see also AT 1241 (noting Dr. Senegor's treatment began in June of 2017).)  However, a substantial portion of the medical evidence supporting Dr. Senegor's opinion of worsening conditions was generated in the last year leading up to the ALJ's decision.  (See, e.g., AT 1191 (June 2018 record from plaintiff's P.A. noting plaintiff "has already been treated conservatively without lasting results"); see also AT 1241 (record demonstrating Dr. Senegor's intent to perform lumbar fusion surgery, despite the "temporary relief in plaintiff's pain level from medications and injections"))  The physicians who reviewed the record at the initial and reconsideration stages did not have the benefit of this latter evidence, as they conducted their reviews in 2017 and January 2018.  Thus, the ALJ's description of the record fails to take account of significant medical evidence.

The Commissioner notes that the new regulations only require an ALJ to articulate why a doctor's opinion was unsupported and inconsistent with the record.  See § 404.1520c(b)-(c).  The

_____

AT 321.)  Thus, it appears inapposite to Dr. Senegor's opinions on plaintiff's physical limitations.

9

Commissioner argues the ALJ met her burden here by (i) labeling Dr. Senegor's opinion as "not persuasive" and citing to records supporting this conclusion, and (ii) relying on the prior administrative medical findings of Drs. Hyunh and Douglas, whose opinions formed the basis for the majority of the limitations expressed in the RFC. Thus, the Commissioner contends that because the ALJ found Dr. Senegor's opinion not equally persuasive, there was no need to expound on the remaining factors of Section 404.1520c(c)(3)-(5). As the court understands the Commissioner's argument, when an ALJ wishes to label a medical opinion unpersuasive, all she need do is cite to a few pieces of evidence that contradict the opinion in order to fulfill her duty under the new regulations—despite the fact that this "unpersuasive" opinion may be: (c)(1) supported by that source's medical evidence and explanations, and (c)(2) consistent with evidence from other medical and non-medical sources in longitudinal record.

The Commissioner's framework presents two obvious problems. First, it would allow an ALJ to simply ignore evidence in the record that aligns with the opinion. Though the regulations have changed, the governing statute still requires an ALJ to base the decision on "all the evidence available in the [record]." See 42 U.S.C. § 423(d)(5)(B); Ghanim, 763 F.3d at 1164. Second, if an ALJ were allowed to pick through the record for facts that align with an "unpersuasive" finding, and ignore facts that might otherwise call that finding into question, a reviewing court would be required to ignore large portions of the record simply because the ALJ also avoided discussing such evidence. This argument is in conflict with long-standing Ninth Circuit precedent that a court may not affirm by isolating a "specific quantum of supporting evidence." Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). As a court in this district recently noted, the ALJ is still required to fully articulate the rationale relied upon, and this may require some explanation of why seemingly-consistent evidence is rejected. See Jones v. Saul, 2021 WL 620475 *8 (the ALJ cannot "forego articulation of their reason or reasons altogether"); see also Lambert, 980 F.3d at 1277 ("[T]he ALJ must provide sufficient reasoning that allows [for] review."). Simply labeling an opinion "unpersuasive," and failing to discuss the evidence supporting or consistent with that opinion, leaves the court (and likely the claimant too) with little understanding of why this evidence was discarded in favor of other, highlighted evidence.

As of this order, no circuit court has weighed in on whether ALJ's are now allowed to cherry-pick the record in making a supportability or consistency finding, or what kinds of findings explicitly constitute cherry-picking under the new regulations. Recently, however, numerous district courts across the country have remanded where evidence supporting or consistent with a rejected medical opinion was ignored. See, e.g., White v Comm'r, 2021 WL 858662, *20-21 (N.D. Ohio Mar. 8, 2021) (finding the ALJ failed to explain why a physician's limiting opinion was not persuasive in the face of evidence that supported and was consistent with the opinion; relying on prior circuit precedent that "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked"); Kaehr v. Saul, 2021 WL 321450, *2-4 (N.D. Ind. Feb. 1, 2021) (finding the ALJ "cherry-picked evidence, and thus didn't provide substantial evidence to support his conclusion," where the decision did not discuss the supportability of a physician's limiting opinion and did not consider the totality of the record in evaluating the opinion's consistency; citing prior circuit precedent applicable to the new regulations); Vellone v Saul, 2021 WL 319354, *9-10 (S.D.N.Y. Jan. 29, 2021) (finding the ALJ's RFC determination "not supported by substantial evidence" where the ALJ "cherry-picked treatment notes that supported his RFC determination [at times indicating normal gait and spine] while ignoring equally, if not more significant evidence [indicated abnormal gait and worsening lower back pain] in those same records"; relying on cases prohibiting cherry-picking); Etherington v. Saul, 2021 WL 414556, *4-5 (N.D. Ind. Jan. 21, 2021) (finding "a good deal in the record that cuts against [the ALJ's supportability and consistency] determination," and noting "this evidence received no such attention"; relying on prior circuit precedent prohibiting cherry-picking); Audrey P. v. Saul, 2021 WL 76751, *9-10 (D.R.I. Jan. 8, 2021) (remanding for further consideration where "dramatic example[s]" of cherry-picking led the ALJ to ignore a source's "overarching conclusion that Plaintiff suffered from significant and unresolved '[f]unctional difficulty includ[ing] standing, sitting, bending over and walking all 2/2 pain'"); Pearce v. Saul, 2020 WL 7585915, *4-6 (D.S.C. Dec. 22, 2020) (noting the plethora of medical records supporting and consistent with a physician's limiting opinion when determining the ALJ cherry-picked the evidence to discount this opinion, and holding that "[a]lthough the ALJ appears to

have considered the appropriate factors, [she] failed to explain how the evidence supports her conclusion and meaningful review is frustrated"; relying on recent circuit precedent under the old regulations stating that "specious inconsistencies cannot reasonably support a rejection of medical opinions or other evidence"); see also, e.g., Branham v. Comm'r, 2021 WL 1589378, at *6 (N.D. Ind. Apr. 23, 2021); Tumlin v. Comm'r, 2021 WL 1214880, at *10 (M.D. Fla. Mar. 31, 2021); Drake v. Comm'r, 2021 WL 1214689, at *4 (N.D. Ohio Mar. 31, 2021).

In comparison to these cases, other district courts have found it entirely appropriate for an ALJ to articulate a cursory rationale on the supportability and consistency factors where there was no evidence in the record to support a medical opinion. See, e.g., Olson v. Saul, 2021 WL 1783136, at *2 (W.D. Wis. May 5, 2021) (recognizing that the the ALJ "may not ignore evidence that undermines her conclusions," but finding that plaintiff "doesn't point to any such evidence."); Paula J.S., v. Comm'r, 2021 WL 1019939, at *4 (W.D. Wash. Mar. 17, 2021) ("Plaintiff claims the ALJ cherry-picked the record[, but] does not point the Court to any examples of alleged omissions."); Jones v. Berryhill, 392 F. Supp. 3d 831, 339 (M.D. Tenn. 2019) (affirming ALJ's finding that physician's opinion was unpersuasive because it was "not supportable or consistent with the record," where there was no evidence in the entire case record supporting the physician's opinion).

The undersigned finds the reasoning of the above cases highly persuasive and relevant to plaintiff's case. As detailed above, the ALJ failed to discuss significant objective medical evidence from other sources that is consistent with Dr. Senegor's opinion. Because the ALJ cherry-picked facts here when resolving Dr. Senegor's opinion, the proper remedy is remand, where the ALJ may either (a) reaffirm her decision after a more thorough explanation of why Dr. Senegor's opinion was inconsistent, or (b) award benefits. Ford, 950 F.3d at 1154 (the ALJ is responsible for resolving conflicts and ambiguities in the record).[5]

---

[5] In the Commissioner's ten-page summary of the medical evidence, there are multiple descriptions of portions of the record that the ALJ did not discuss. (See ECF No. 24 at 2-11.) The overall character of these citations concern various facts that an ALJ might consider when entering a finding of malingering. (See, e.g., id. at 2 ("Plaintiff said he had been taking his mother's Norco (an opioid medication) for pain (AR 520)."); id. at 3 ("adding that he had been eating more brownies with THC, purportedly to help his mood (AR 361)."); id. at 4 ("Between

**B. The ALJ's analysis of plaintiff's subjective-symptom testimony.**

Because further proceedings are required, the court does not reach plaintiff's subjective-symptom-testimony argument. On remand, it is of course within the ALJ discretion as to how much additional analysis should be performed on this issue.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 24) is DENIED;

2. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;

3. The final decision of the Commissioner is REVERSED AND REMANDED for further proceedings; and

4. The Clerk of Court shall issue judgment in plaintiff's favor and CLOSE this case.

Dated: May 11, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

thom.3

---

April 28 and June 12, 2017, Plaintiff approached at least five different clinicians requesting assistance with his efforts to obtain disability benefits, offering varied explanations for why he should be found disabled. All declined."); id. at 5 ("The clinician noted Plaintiff's frustration over his refusal to complete the disability forms (AR 328)."); id. ("[O]n May 17, 2017, Plaintiff expressed similar frustrations to Ms. Coble, stating that he was stressed by his lack of income and frustrated because his primary care practitioner released him to return to work, contrary to his wishes (AR 321)."); id. at 6 ("On June 14, 2017, just two days after Dr. Wang refused to complete disability paperwork, Plaintiff met with a primary care physician . . . at Lodi Health, . . . expressing dissatisfaction with his prior physician, purportedly because she accused him of drug-seeking behavior and did not help him (AR 754)."); id. at 9 ("Rather than return to Dr. Aquino [after she recommended conservative treatment], Plaintiff opted to find a new provider.").) However, as the ALJ made no finding of malingering, the undersigned can only conclude the Commissioner refers to these portions of the record in order to call into question plaintiff's character. In the absence of a malingering finding for this court to review, these background events are quite irrelevant. The court finds the Commissioner's extreme emphasis on these details an inappropriate and unhelpful distraction from the court's ultimate duty simply to review the findings stated by the ALJ for legal error and substantial evidence.